```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                              :
SROKA ADVANCE VEHICLES, INC.,                 :
                                              :       CASE NO. 1:11-CV-907
            Plaintiff,                        :
                                              :
    v.                                        :       OPINION & ORDER
                                              :       [Resolving Doc. No. 14]
MATERIAL HANDLING, INC.,                      :
                                              :
            Defendant.                        :
                                              :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Material Handling, Inc. ("MHI") moves the Court to compel arbitration and stay litigation in Plaintiff Sroka Advance Vehicles, Inc.'s breach of contract, *quantum meruit*, unjust enrichment, and fraud suit. MHI argues that a binding arbitration agreement, integrated into its contract with Sroka, demands that Sroka's claims be submitted to arbitration. [Doc. 14.] Sroka opposes the motion, saying that the arbitration agreement does not apply to the instant case because it is contained in a contract to which Sroka is not a party. [Doc. 17.]

In deciding whether to compel arbitration and stay the pending litigation, the Court must decide whether the parties' contract incorporates the arbitration agreement and whether that agreement applies to Sroka's claims. For the following reasons, the Court **GRANTS** MHI's motion.

**I. Background**

On February 1, 2010, Plaintiff Sroka entered into a contractual Purchase Order with Defendant MHI for the production and delivery of a custom industrial tugger vehicle, [Doc. 17-2], that MHI would later sell to a third party, Alstom Power Turbomachines LLC. The equipment

Case No. 1:11-CV-907
Gwin, J.

Purchase Order resulted from communications between Sroka and MHI that began in January 2010, when Sroka quoted MHI a price for the equipment.

On January 6, 2010, before executing the Purchase Order, MHI had faxed Sroka a document entitled "Alstom Tugger Purchase Order/General Conditions for Purchase of Capital Expenditures" (General Conditions). Paragraph 34 of General Conditions contains an arbitration agreement that stating in part:

> All disputes arising in connection with this Agreement or out of the interpretation or execution of a related PO [Purchase Order], which the Parties fail to settle amicably within 30 days after the dispute has been brought to the attention of the other Party by way of formal notification shall be settled by final and binding arbitration in accordance with the Commercial Rules of the American Arbitration Association by 3 arbitrators to be appointed according to such rules.

[Doc. 14-4 at 26; Doc. 14-5 at 26]. Exhibit C to the General Conditions contains a Liquidated Damages provision, which applies a 1.5% liquidated damages rate to any delay in fulfilling obligations under the Purchase Order. [Doc. 14-5 at 3.]

The cover page to MHI's fax asked Sroka to "review all pages [of the General Conditions] and confirm [Sroka's] agreement to stand behind and comply by noting ok and sign and dating the bottom of each page." [Doc. 14-3.] The cover letter noted that "[i]f there is anything you want omitted cross off and write in what you will agree to and sign and date it as well," and concluded that "[t]his document will become part of MHI's Purchase Order to [Sroka] Advanced Vehicles." [Doc. 14-3.] Sroka Vice President Adam Sroka made several changes to the attached General Conditions. He returned the General Conditions to MHI with these changes, his initials next to each change, and his initials and date on each page. [Doc. 14-4.] MHI incorporated the changes. Sroka reviewed the document again and returned it after initialing and dating the pages. [Doc. 14-5]. Sroka says,

-2-

Case No. 1:11-CV-907
Gwin, J.

however, that he initialed the General Conditions only to advise MHI and never signed or received a final version. [Doc. 17-4].

Sroka and MHI then executed a Purchase Order for the industrial tugger, which set out the cost of the equipment, a payment plan, and the date and method for delivery. The Purchase Order also contained a reference to a quote in document "RFQ#F22," but it did not mention the General Conditions. [Doc. 17-2.] In a series of emails between MHI and Vice President Sroka, MHI asked Sroka to confirm that it "[h]as read entire customer purchase order and agrees to provide MHI/Alstom all the information requested and comply with all the purchase order requirements as requested when requested." [Doc. 14-6]. Sroka replied, "Confirmed based on the agreed upon markups of the preliminary contracts." [Doc. 14-6].

On February 4, 2011,[1] Vice President Sroka sent a letter to MHI entitled, "RE: Delay in Delivery of Industrial Tow Tractor – Assessment of Liquidated Damages." [Doc. 18-1.] In the letter, Sroka sought to justify a delay in delivery of the equipment and asked that MHI not assess liquidated damages for the delay. Sroka stated that "[i]f the Liquidated Damages are assessed, the loss . . . will make it nearly impossible for Sroka to support the equipment delivered." [Doc. 18-1.]

Sroka now brings the instant suit for breach of contract, *quantum meruit*, unjust enrichment, and fraud against MHI, which was removed to this Court on May 9, 2011. [Doc. 1.] On June 16, 2011, MHI moved the Court to compel arbitration and stay the litigation pursuant to the arbitration provision in the General Conditions. [Doc. 14.]

**II. Legal Standard**

---

[1] Though the email is dated February 4, 2010, the context of that email references, as past, dates subsequent to February 2010, suggesting that "2010" in actuality read "2011."

Case No. 1:11-CV-907
Gwin, J.

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, provides that where a "party [is] aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [he] may petition" for an order compelling arbitration and staying proceedings in federal court "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. §§ 3 & 4. The FAA manifests a strong "federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "Federal law demands that courts rigorously enforce arbitration agreements." *Rupert v. Macy's, Inc.*, No. 09-CV-2763, 2010 WL 2232305, at *4 (N.D. Ohio June 2, 2010).

In deciding a motion to compel arbitration, courts treat the evidence presented as they do on a motion for summary judgment. *Rupert*, 2010 WL 2232305 at *3; *Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 558 (N.D. Ohio 2004). Accordingly, courts should "consider facts in the light most favorable to the Plaintiff when determining whether a valid and enforceable arbitration agreement exists and exercise its wide discretion to look beyond the complaint at pleadings and documents submitted by either party." *Anderson*, 316 F. Supp. 2d at 558.

If the court finds no issue as to the construction of or failure to comply with a valid arbitration agreement, it shall direct the parties to proceed to arbitration as provided in the agreement. However, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed" to an evidentiary hearing on the validity or applicability of the arbitration agreement. 9 U.S.C. § 4.

Case No. 1:11-CV-907
Gwin, J.

### III. Analysis

In deciding a motion to compel arbitration and stay proceedings in federal court, the Court must determine: (1) whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be non-arbitrable; and (4) if some but not all of the claims are subject to arbitration, whether to stay the remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *see Teamsters Local Union No. 89 v. Kroger Co.*, 617 F.3d 899, 904 (6th Cir. 2010) (on a motion to compel arbitration, courts "must determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." (quotations omitted)).

Sroka principally argues that it is not bound by the arbitration agreement in the General Conditions because it did not consent to or sign that document. [Doc. 17 at 1.] Sroka also contends that even if the arbitration agreement was incorporated into its Purchase Order with MHI, any modifications or upgrades to the industrial tugger subsequent to the Purchase Order would not be subject to the agreement. [Doc. 17 at 10.] Based on these arguments, the Court must only consider the first two prongs of the *Stout* test: whether the parties agreed to arbitrate and the scope of any such arbitration agreement.

#### A. Choice of Law

As a preliminary matter, the parties dispute whether Ohio or Tennessee contract law governs resolution of the instant motion. *See Price v. Taylor*, 575 F. Supp. 2d 845, 851 (N.D. Ohio 2008) ("In determining whether the parties formed a valid arbitration agreement, 'state law may be applied if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts

Case No. 1:11-CV-907
Gwin, J.

generally . . .'" (quoting *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 899 (6th Cir. 2002) (internal citation omitted))). The Court need not decide this issue, however, as there is no material difference between Ohio and Tennessee law in the respects relevant to MHI's motion.

*B. Applicability of the Arbitration Agreement*

Sroka argues that because the General Conditions constitute a contract solely between MHI and a third party (Alstom), none of its provisions, including the arbitration agreement, bind Sroka. And, Sroka says, its contractual Purchase Order with MHI does not incorporate the General Conditions. To this end, Sroka points to the language of the Purchase Order, which references another document ("RFQ#F22") but does not mention the General Conditions. [Doc. 17-2.] If the Purchase Order incorporates the terms of the General Conditions, Sroka says, it would have explicitly referenced those terms.

Sroka's argument is unconvincing in light of evidence showing that the Purchase Order was only a partially-integrated document and that, in turn, the parties intended the Purchase Order to incorporate the terms of the General Conditions. *See* RESTATEMENT (SECOND) OF CONTRACTS § 209 comment c (1981) (in determining whether an agreement is partially- or fully-integrated, a court may consider admissible extrinsic evidence); *Monroe Excavating, Inc. v. DJD&C Dev., Inc.*, No. 10 MA 12, 2011 WL 2552720, *4 (Ohio Ct. App. June 17, 2011); *Healthmart USA, LLC v. Directory Assistants, Inc.*, No. M2010-00880-COA-R3-CV, 2011 WL 1314662, *2 (Tenn. Ct. App. April 6, 2011). First, the cover letter to the General Conditions, faxed to Sroka on January 6, 2010, specifically states that if Sroka indicated it would "stand behind and comply" with the terms of the General Conditions by making revisions and signing each page, the General Conditions "will become part of" the Purchase Order between the parties. [Doc. 14-3.] After making several changes,

Case No. 1:11-CV-907
Gwin, J.

Sroka initialed and dated the pages of the General Conditions. [Doc. 17-3.] MHI then drafted the Purchase Order, which Sroka also signed. [Doc. 17-2.]

Second, Sroka's February 4, 2011 email to MHI explained a delay in its delivery of the equipment and requested that MHI not assess "Liquidated Damages" for this delay. [Doc. 18-1.] *See* RESTATEMENT (SECOND) OF CONTRACTS: LIQUIDATED DAMAGES AND PENALTIES § 356 comment a ("The parties to a contract may effectively provide in advance the damages that are to be payable in the event of breach . . ."). As the Purchase Order itself contained no liquidated damages provision, Sroka's request indicates that Sroka considered itself bound by the liquidated damages terms in the General Conditions, as integrated into the Purchase Order. Thus, even drawing all inferences in Sroka's favor, Sroka's actions and communications evidence an understanding that the partially-integrated Purchase Order incorporated the terms of the General Conditions, including its arbitration provision.

Moreover, the General Conditions' arbitration provision does not contradict the terms of the Purchase Order, which does not reference arbitration or contain provisions that would conflict with an agreement to arbitrate. *Compare* [Doc. 17-3] *with* [Doc. 17-2]. *See Miller v. Lindsay-Green, Inc.*, No. 04AP-848, 2005 WL 3220215, *8-9 (Ohio Ct. App. Dec. 1, 2005) (though the parol evidence rule does not apply to partially integrated contracts, courts still may not admit extrinsic evidence that contradicts or varies a contract's terms); *see also Litterer v. Wright*, 268 S.W. 624, 624 (Tenn. 1924) (same). Reading the two documents together, the Court finds a valid and enforceable arbitration agreement between Sroka and MHI.[2] *See Center Ridge Ganley, Inc. v. Stinn*, 511 N.E.2d

---

[2] Sroka makes no argument that if the arbitration agreement applies to Sroka's claims it is otherwise unenforceable. *See* 9 U.S.C. § 2 (Courts will generally uphold an arbitration provision unless grounds "at law or in equity" render it unenforceable).

-7-

Case No. 1:11-CV-907
Gwin, J.

106, 109 (Ohio 1987) ("As a general rule of construction, a court may construe multiple documents together if they concern the same transaction."); *Oman Const. Co. v. Tennessee Cent. Ry. Co.*, 370 S.W.2d 563, 573 (Tenn. 1963) (same). Sroka's assertions that it would not have consented to such an agreement, which are supported only by its own self-serving affidavit, [Doc. 17-5], are insufficient to belie this conclusion.

*C. Scope of the Arbitration Agreement*

Having found that the General Conditions' arbitration agreement is integrated into the Purchase Order and thus binding on the parties, the Court must evaluate whether some or all of Sroka's claims fall within the scope of this agreement. See *Stout*, 228 F.3d at 714.

The arbitration provision in the General Conditions broadly states that "all disputes arising in connection" with the General Conditions or a related Purchase Order must be submitted to final and binding arbitration. [Doc. 17-3 at 26.] In response to this broad scope of issues subject to arbitration, Sroka says that even if this language applies to Sroka's claims stemming from the Purchase Order itself, it does not cover MHI's subsequent oral requests upgrades and modifications to the Purchase Order. [Doc. 17 at 10.] Sroka's distinction between the original Purchase Order and later modifications to the Purchase Order fails. Because a contract's broadly-worded arbitration agreement not only governs disputes arising directly under the contract but also applies to other disputes that could not be maintained without reference to the contract or relationship at issue, *NCR Corp. v. Korala Assoc.*, 512 F.3d 807, 813-14 (6th Cir. 2008), the General Conditions' arbitration clause covers each of Sroka's claims.

**IV. Conclusion**

Finding a valid and enforceable arbitration agreement between the parties that governs all

Case No. 1:11-CV-907
Gwin, J.

of Sroka's claims, the Court **GRANTS** MHI's motion to compel arbitration and stay the litigation pending before this Court.

       IT IS SO ORDERED.


Dated: July 25, 2011                    s/  *James S. Gwin*
                                             JAMES S. GWIN
                                             UNITED STATES DISTRICT JUDGE